Good morning, your honors. Amanda Bond with Sussman Godfrey on behalf of plaintiffs. May it please the court. It is undisputed that plaintiffs insurance policy covered acts of terrorism and excluded acts of war or warlike action by military force. It is undisputed that within the insurance industry, there is a custom and usage that these exclusions apply to hostilities between sovereign entities. And it is just for clarification, when you say it's undisputed, what, because of expert testimony? A number of factors, your honor. Yes, there is expert testimony below from plaintiffs expert, Mr. Sagalow, which is unrebutted. Mr. Sagalow's declaration walks through the insurance industry custom and usage, distinguishing acts of war from acts of terrorism, in particular, in the context of post 9-11 insurance policies. And defendant had no expert testimony rebutting Mr. Sagalow's opinion. So what was his bottom line conclusion? That the war is the way you use it in your brief? Yes, sir. Mr. Sagalow's opinion, and in particular, this is can be found at page 3791 of the record in volume 15. Volume what? Volume 15? Yes, sir. At page 3791. And Mr. Sagalow makes several points. Number one, that with respect to these particular exclusions, industry custom and practice attempts to align the interpretation with the position of the U.S. government with respect to who is a sovereign. On page 3794. Was he giving his opinion specifically with respect to California law? Sir, with respect to his opinion, he does not address legal requirements or California law. Instead, he is addressing, writ large, the insurance industry's custom and usage as a matter of fact. And so his opinion is that from that you infer that that's the way it's used in California. Correct, Your Honor. Because under Civil Code Section 1644, if there is evidence of a custom and usage, which therefore implies a special meaning, and Mr. Sagalow's opinion is that there is, then under California law, that meaning must be applied. Well, that's the reason I asked you whether his testimony was specific with respect to California law. Yes, sir. I think that a fair way of characterizing his opinion is establishing the existence of the customer usage, and then we are making the argument that under Section 1644, that is the predicate for applying the special meaning as required under California law. All right. Thank you. Thank you, Your Honor. And in addition to Mr. Sagalow's unrebutted opinion, there's also additional evidence. Number one, in defendant's own denial of coverage letter, they themselves took the position that these war and warlike action exclusions are interpreted to apply to government entities that are at least de facto sovereigns. And then the denial letter proceeded to argue erroneously that Hamas should be treated as a sovereign. So that's additional evidence showing this custom and usage is undisputed. And finally, in both the briefing below and the briefing before this court, the defendant has made the argument that plain and ordinary meaning should apply, because according to defendant, there is no specific evidence that the parties intended to use a technical meaning. That is a legal argument about which interpretation should apply. But there is nowhere in their briefing below or on appeal where they dispute that within the insurance industry, there is a custom and usage of applying these exclusions to the actions of sovereign or quasi-sovereign entities. If we agree with you that the district and the court should consider these exclusions in terms of custom and usage, do we then reach our conclusions in the first instance, or do we have to send it back for reanalysis by the district court? And the reason I ask that is that is the record complete, or are there additional evidence in the record such that it's really appropriate for the district court to consider them and weigh them in the first instance, such as countervailing expert testimony or additional arguments? Because we have the excerpts of record that you've presented for purposes of directions, depending on whether there's still factual issues to be resolved before that conclusion is reached by the district court. Absolutely, Your Honor. I think in particular with respect to the existence of this special meaning by virtue of custom and usage, the facts are undisputed for the reasons that I just mentioned. There is no countervailing expert opinion that defendants have offered to rebut the opinion of Mr. Sagalow. And in fact, in both their briefing below and on appeal, there is no argument that defendants have raised that as a matter of fact, there is no such custom or usage. Their own denial of coverage letter acknowledged this industry custom or usage. So in this particular circumstance with respect to the definition of war and warlike action by a military force, I think the record is complete. I think the record reveals that there is no dispute of material fact. The only question is whether California law under section 1644 mandates applying that special meaning. And for that reason, we don't think there is a factual issue for the district court to weigh in the first instance when it comes to war and warlike action by a military force. I would also add that even if defendant or correct and plain and ordinary meaning should apply, we think that the plain and ordinary meaning of those terms would also support plaintiff's position. In fact, the very dictionaries that the district court cited, albeit citing secondary definitions that apply to things like price wars or class wars, if you actually look to the primary definitions that apply to wars of violence, which are clearly what these particular exclusions were contemplating, those definitions also make clear that war is understood to involve sovereign or quasi-sovereign entities. And so where that leaves us is defendant's argument, one that the district court adopted below, that contrary to United States foreign policy, as expressed by numerous presidential administrations going back decades, that Hamas is a foreign terrorist organization, that this court should deem Hamas to have some sort of indicia of sovereignty. And that kind of finding, issued by a court of appeal directly contrary to the foreign policy of the executive branch, not only is contrary to law, over a century of law, we cited, I believe, the Wittgen case, I have no idea if I'm pronouncing that correctly, O-E-T-J-E-N, this court's Ming Thai fire case. And so that type of finding is one that the law simply recognizes would be inappropriate. The recognizes that deference to the executive branch is appropriate. Well, all right, but the deference is a little bit different than, you know, a binding decision, right? In other words, it's still up to the court to decide what the insurance definition means. And maybe, you know, you defer to a certain extent to say what the State Department says or what necessarily error not to follow the executive's determination, which are made for different purposes, when I say different other than insurance purposes. Yes, Your Honor. And what I would like to suggest is that in addition to deferring to the executive branch, not abdicating, but deferring, part of what's at play here is the requirement under California law that the exclusions be in addition to the political role... Well, that gets you to Judge Anderson's, I guess, conclusion that that, I guess, principle, right, contra pro forentum, should not be applied in this case. Yes, Your Honor. I think that's exactly where it takes us. And addressing that particular point, I think there is no support in California case law, nor did defendants cite any case, nor did the district court cite any case, that in circumstances like those presented here, where the exclusions are form language, in fact, form language found in standard ISO forms that have been issued in insurance policies for decades, that the mere fact that the form language was initially proposed by the insurance broker would justify departing from the law, that exclusions should be read narrowly, that they should be clear and conspicuous, and that they should be interpreted to respect the reasonable expectations of the insured. And in fact, the case that the district court relied upon for that proposition is AIU Insurance Company. It's a California Supreme Court case. And interestingly, in that case, while the court acknowledged that there might be circumstances where deviation from the rule could be appropriate, for example, if an insured were not only sophisticated, but jointly drafted the language in question. In AIU Insurance, the court declined to deviate from the rule precisely because the form language at issue was found to come from standard CGL insurance policies that had been drafted and used by the insurance industry for decades. So in fact, the very case that the contra-preferendum supports precisely the opposite proposition here. Does the record reflect that, so this form language was submitted by the broker, and then I think the Atlantic then made some revisions and changes to the language, so they didn't use it in its exact form. I mean, can that be said to be some sort of agreement, joint negotiation of some sort that would counter your argument? I understand the question, Your Honor. And I would say in this case, no. And in fact, the drafting history supports precisely the opposite conclusion for a couple of reasons. Number one, it's undisputed that there were no edits that were made to the first three war exclusions, war, war-like action, and insurrection. You mean no edits made to the ISO form? Correct, Your Honor. With respect to those three exclusions, they are simply identical copy and paste from the ISO form. There were edits that defendant made to the fourth exclusion for weapons of war, including atomic fission. That particular exclusion was not reached by the district court below, nor does defendant raise it on appeal. So the only edits were to a separate exclusion from the ones presented on this appeal. In addition, I'd like to add something else from the drafting history from the record. In the drafts that were exchanged back and forth, and this can be found as part of the Walden Declaration. This is in Volume 7. The declaration, I believe, starts at 1343, and the pertinent part of the draft I'll discuss is at 1388. At 1388, it appears that when the parties were exchanging these drafts, there was initially an endorsement form that was titled Endorsement Number 2, titled Exclusion of War, Military Action, and Terrorism. Below that, there's a Roman 1 that has exclusions for war and military action, and the language mirrors exclusions 1 through 3 at issue in this case. And below that section, there's a Roman 2, presumably the terrorism that's referenced in the title of the endorsement, that's blank. It appears to have been deleted. And in a subsequent round of edits, that endorsement sheet is removed altogether, and the three war exclusions are included elsewhere in the policy. And so in fact, I think the drafting history of these policies actually reflects that the parties knew an exclusion for terrorism would be separate and a possibility. It was deleted. It was omitted from the policy. And that's all the more reason why the rule of contra proferentum should not be abandoned here. You're down to a minute and a half. Do you want to save that for Roberto? I would like to. Thank you, Your Honor. Good morning, Your Honors. Margaret Grignot for Appellee Atlantic Specialist Insurance Services. This is an insurance coverage case. As hard as NBC tries, it is not a case involving a political question or a separation of powers issue or any argument about this court interfering in the foreign affairs of the United States. The case involves a straightforward application of exclusions in insurance policy, war-related exclusions that have been in insurance policies for decades and have been interpreted by courts regularly in different circumstances. Let me start with Section 1644, because it is a coverage case, and we go right to the statute which says the words of a contract are to be understood in their ordinary and popular sense, unless used by the parties in a technical sense or unless a special meaning is given to them by usage. So in which case the latter must be followed. So as I read it, is that if there is a special meaning that's given by usage, then you follow that instead of the ordinary meaning. So given that there was evidence presented by way of expert in this case of special meaning given by usage, why is it appropriate not to consider that? For several reasons. First, the courts in California have consistently said that war is to be interpreted according to its ordinary and popular usage. There's not a case in California that says anything but that. So under California law, that's the definition that applies. Secondly, to the extent... Can you give me a... Is there a Supreme Court case on that? Can you give me a citation? Not to a Supreme Court? Not to a California Supreme Court. Give me your best California case on that. When you say there are countless cases. I'm sorry, Your Honor. So the California cases are Kaiser versus Hopkins, which is a... Just give me your... Is that your best case, Kaiser? It is a California Supreme Court case, yes. All right, Kaiser? Yes. And then in... Well, what's the citation? I'm sorry. 6 Cal 2nd, 537. Okay, now let me ask you. Cal 2nd, 5 what? 537. Now, that case says that... What? There's a way to interpret war under California law and we've always interpreted that way or something like that? Is that what you're saying? Yes, Your Honor. It is not an insurance case. There are three California cases that are cited in the brief on page... It's not an insurance case? What kind of case is that? It is interpreting either a statute or another agreement. Well, in other words, it had no occasion to try to bring that into line with Section 1644, did it? Yes, it does, Your Honor. 1644 is not relevant to that kind of case, is it? 1644 applies to all contracts. In other words, it is not insurance specific. It applies to all contracts in California. Does that case talk about 1644? It does not. All right. Well, then it seems to me to have no relevance because we're trying to figure out how 1644 is applied and why special meaning given by usage is not the key determination in determining the meaning of the words in the contract, right? Your Honor, with respect to special meaning by usage, I would say another point is that the two cases that are cited in the appellant's brief have nothing to do with interpreting insurance language. They, first of all, the first one is a usage that implies a provision that's not in the insurance policy. So the first case they cite has nothing to do with interpreting insurance language. And the second case... Why do we need to resort to case law at all if we've got a statute that both sides agree govern how words in the contract are to be interpreted? I think the dispute between the parties is that it's technical or special meanings, but the parties have to indicate that our position is the parties have to indicate that they are ascribing a technical or a special meaning to it. And their position is that they can say later on that there was a special meaning regardless of whether the parties discussed it or had any agreement about it. Which is a question of statutory interpretation, right? It's the same as contractual interpretation. It's simply the contractual interpretation... But where's the statutory? I mean, what does the statute mean? In other words, is there any qualification to, you know, unless there's custom and usage? There is, yes. There are cases and we have cited them where technically... I'm talking about statute. The question is, you know, does the statute qualify that last phrase the way it qualifies the first phrase? It does not. It does not, Your Honor. For some reason, Judge Anderson never addressed that final clause, did he? So, Your Honor, let me just go then back to... Is that true? He didn't address it? He did not address it. So then you have his declaration that in order for the war exclusion to apply, that the individual or the entity engaging in the war has to be a quasi-sovereign or a de facto sovereign. He does not say that with respect to the warlike actions. He, you know, kind of and that's inconsistent in any event with the language of the warlike actions. So even if you assume that for purposes of war, you need to be a de facto sovereign, he really did not say that conclusively with respect to the warlike action. Now let me turn to de facto sovereigns. So Hamas is the de facto sovereign of Gaza, and that has been made clear in any number of writings, including the Congressional Research Service reports that we've indicated. But from a factual basis, Hamas governs Gaza. It's a substantial territory. Are you talking about at the time these incidents occurred? Yes, Your Honor. By that time, hadn't Hamas turned over, say in a sense, the authority to somebody else? Your Honor, what happened was, is that originally Hamas gained control of the legislature in Gaza by election. The next year, it gained total control by military force. Then it became clear to Hamas that the United States and Israel would not deal with it. And so therefore, minutes before this war broke out, minutes before this war broke out, Hamas entered into a consensus agreement with Fatah where it backed away from formal being in charge of the government. Nevertheless, all of the evidence indicates that from that point forward, it continued to be the de facto government. What do you mean by all of the evidence? The evidence that's in the Congressional Research Report, the other indications of Hamas, that after this consensus agreement, Hamas continued to be the governing authority of Gaza. And even in some of the NBC paperwork, NBC statements that were made in this period of time, it was indicated that Hamas was the de facto governing force of Gaza. So they continued to have a military branch called the Kassam Brigades, which is the military branch that's in fact engaged in this war. They had a political branch and a social welfare branch. They ran the schools. They ran the hospitals. They had a judicial system. Is there evidence that that's the branch that were firing these rockets into Israel? Your Honor, the military branch of... My question is, is there evidence? Yes, Your Honor. The military branch of Hassam is the Kassam Brigades. And those are the military forces that Hassam used to engage in the Gaza war with Israel. Well, my question was, is there evidence that it was that what you call their military force that fired the rockets into Israel? There is evidence of that, Your Honor. I can't point you to anything specific in the record. There's evidence, but you can't point to it? I can't, Your Honor. I'm sorry. It's Atlantic's burden to demonstrate that the exclusions control, right? Yes, Your Honor. So that means it's your burden to really point us to the evidence. Yes, Your Honor. I understand. So if Hamas is a governing authority, then in fact, under any definition, it can engage in war with Israel. And it did engage in war with Israel in this particular case. Hostilities broke out between Hamas and Israel over the abductions and murders of some teenagers in... Before you pass on, I want to hear your side of the argument on... You just alluded a bit that, you know, obviously the war-like action exclusion is different from war, right? Yes. A little bit different. So, but does the war-like action require that the person who engages or the entity that engages in the war-like action be a sovereign or de facto sovereign? Is there any qualification like that on the war-like action? There is not, Your Honor. And I will read it to you. It's war-like action by a military force. And so war-like action by a military force must mean something other than war by a de facto entity. Otherwise, the two exclusions would be identical and their what war-like action by a military force means. And if you look at the Pan Am case, they agree with this. It's armed operations of organizations not affiliated with a nation state directed primarily against a nation's armed forces. So you have... Against what? A nation's? Against a nation's armed forces. So armed operations of organizations not affiliated with a nation state directed primarily against a nation's armed forces. And the Pan Am court, the district court, made a clear distinction between terrorists and terrorism and terrorists and war-like actions. And the Pan Am court said, when this terrorist organization hijacked a plane in London and there were no war activities going on, that was a terrorist act and it wasn't covered by the war-like act exclusions. But if those same terrorist organizations had entered into battles with Israel, bombed Israel, and taken violent action against Israel as Hamas did in this case, that would be a war-like action. It's a very different... But there, as to the second exclusion, we'd still have to look at what the expert says in determining whether there's a special usage, right? So you could look at what he said. As I indicated, Your Honor, I do not believe he explicitly said that. And it is against the special usage that they are divining from the Pan Am case. In other words, they rely almost exclusively on the Pan Am case and what the Pan Am case says. And then to say that Pan Am treated war and war-like operations the same is not true. So they can't pick and choose what they want out of the statute. Let me ask you this on that point, though. Isn't that what Judge Anderson did? No, he said both of those exclusions apply, right? War and war-like action? He did, Your Honor. Well, isn't he conflating the two? Like you said, he shouldn't? He may have. But he may have. But which is the error? Is it the war or the war-like action? Your Honor, we believe that this was a war. It was a war. Everyone called it a war. It's a war, as everyone understands it. There isn't anyone except NBC who thinks that the 50-day war between Israel and Hamas in 2014 was not a war. It was a war. If, for some technical reason, this Court thinks that the meaning of war in the policy means something else, then at a minimum, it must be a war-like action. Because otherwise, war-like action and war must mean the same thing. And if you look at what went on here, this was a war between military forces. It wasn't a terrorist act. It wasn't a hijacking of a plane. It wasn't a suicide bomber. It wasn't anything other than a war. Israel and Gaza, they're military forces, and they both have organized military forces. Isn't part of the international law a definition of military force as a force governed by a sovereign, or quasi-sovereign, or de facto sovereign? No, I don't think so, Your Honor. In other words, if you... Really unrelated to national interests, huh? Military force? Your Honor, in this day and age, a military force is not necessarily connected to a state. Now, we think that Kassam Brigades, the military force, was definitely connected to Gaza, and that Hamas was the governing force of Gaza. But you could have military forces that were not connected to a nation-state, and as early as the Pan Am case, the Pan Am Court recognized that that was a possibility, and that would be war-like actions. If you go back to the... Today, what is your best example of a military force that is not sponsored by a sovereign? Al Qaeda? You consider that a military force, as opposed to some kind of guerrilla or terrorist outfit? Yes, Your Honor, and so does the U.S. Supreme Court. In the cases of Hamdan and Hamidi, the U.S. Supreme Court said that the U.S. was at war with Al Qaeda, which is on the foreign terrorist organization. The mere fact that an entity is on the foreign terrorist organization doesn't mean that it can't engage in war. As Your Honor pointed out... Well, no, it obviously can engage in hostile actions. The question is whether it's a military force, which is different, isn't it? I mean, you know, a lot of guerrilla operations are not military forces. Your Honor, this Court in the Dairy Engineering, or the Dairy case, I'm not remembering the whole name, but it had something to do with dairy engineering, held that the... also considered the Viet Cong to be engaged in war during the Vietnam War, even though that wasn't... So there's many examples of... Civil War is another example where you have military forces that aren't connected with any particular state. And the other thing I'd like to... That would come under the other definition of insurrection, wouldn't it? Not necessarily, Your Honor. If you look at war, if you look at the war exclusion, it says war, comma, including undeclared or civil war. So the war exclusion in this policy reflects that it considers civil war to be a war. There's some hint in Judge Anderson's order that treating this like a civil war, this very incident, right? Yes, Your Honor. And I could just point out that although we believe that Judge Anderson got this on your own, regardless of any errors of analysis that you think the judge may have entered into, we've taken you over time. But thank you very much for your argument. Thank you. Yes, thank you. So briefly addressing war-like action by a military force. The cases that were cited near the end of the argument, in particular, this court's, I believe, international dairy decision, actually addressed insurrection when it was addressing the Viet Cong. And so that case has no support for the proposition that a military force encompasses guerrilla groups or terrorist groups. And to the contrary, the district court itself acknowledged that dictionary definitions of military actually define a military as the armed services of a nation. Can you address counsel's point that with regard to the second exclusion, the expert's declaration was not explicit like it is for exclusion number one? I think for both exclusion one and two, Ms. Grignon may have been correct in saying he addressed both of them and essentially blurred them together. He addresses the war exclusions as a whole. And what he says is that the war exclusions are treated as applying to sovereigns or quasi-sovereigns. And by contrast, after 9-11, insurance companies actually draft separate terrorism exclusions when they intend to exclude terrorism by non-state actors. And what's the difference between exclusion one and two? Your Honor, I think that a war versus war-like action by a military force could have other differences aside from sovereignty. In particular, it may reflect the duration or the extent of the war-like actions being taken. So, for example, if the United States military were to, for example, proceed in some sort of brief incursion across the border with Mexico in reaction to war-like action by a military force but would not rise to the level of a war. So the suggestion that sovereignty is somehow the distinction between the two has no evidence in the record and no legal support. On top of that, within the record, and this is volume 19 at page 4251, there is another insurance policy that was issued by one beacon, the parent of Atlantic, just a year prior to this policy, where they actually include a separate terrorism exclusion separate from the war and war-like action exclusion. This is at page 4277. And it defines other acts of terrorism as a violent act or an act that is dangerous to human life, property, or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion. Are terrorism and war-like actions mutually exclusive? Your Honor, yes. And once again, that comes down to the expert declaration from Mr. Sagalow, whose opinion is that especially in the post-911 context, because this very question arose when there were over 3,000 Americans killed, $10 billion in property damage, do the war exclusions apply? And what he says is that, number one, the insurance industry as a whole treated 9-11 as an act of terror. And subsequent to that, a custom and usage arose by which insurance companies, when they intend to exclude terrorism, will specifically draft an exclusion, making it clear. And in fact, one beacon did just that in this case in volume 19 of the record at 4277. All right. Thank you, counsel. Of course. Two quick general questions. One, this may be hypothetical, but if we agree with you that neither of these two exclusions apply, then obviously that leaves the other two exclusions, right, which were raised. So should we decide that? Should we send it back to the district court? Excellent question, Your Honor. I think on exclusion three, defendant has raised that in their answering brief on appeal. Defendant has asked this court to reach it. We think that the record as it stands is clear that it applies to an uprising by civilians for the purpose of overthrowing their own government, and that wouldn't apply. However, we've also indicated to the court that there is additional factual evidence that the district court might be able to consider if it were sent back. So we think the record is clear. We think because defendants have asked this court to address that exclusion, it would be appropriate for this court to do so on the record. But obviously that's a decision for this court to reach. Let me ask just one more general question. Have you ever given thought to certifying this question to the California Supreme Court? I've certainly thought about whether this court might be interested in it. We haven't thought of that, Your Honor. In particular, I'm not sure whether it's a question that's appropriate for certification for a couple of reasons. Number one, I think that California law under Section 1644 is actually very clear. And on top of that, there's an undisputed factual record. There's no case that directly addresses these two specific exclusions, is there? That's correct, Your Honor. Under California state law, there is not. But we would suggest that because of the undisputed factual record and the absolutely clear law under Section 1644 that a special meaning must apply, that this court need not certify the question to the California Supreme Court, that it's one that's appropriate for this court to decide. Thank you. Judge Cole has a question. Do you think that we should remand the bad faith issue? There are arguably some issues of fact there, and maybe we should send that back to the district court to decide. Or should you think the record is sufficient for us to decide it without district court intervention? I would say our position is that there are absolutely fact issues when it comes to the bad faith claim. It is a claim that we believe a jury must decide in this case. We think that in the first instance, it is appropriate for this court to recognize that there are potential factual disputes. In particular, the district court's decision on the bad faith claim was that because the court's own interpretation was reasonable, that means there could be no bad faith. And what we've seen is that number one, that actually is not the appropriate interpretation. And number two, it's not actually the interpretation that the defendant applied during the course of the investigation. And so we think it's appropriate for this court to say that there are fact disputes and to remand the bad faith claim to the district court for further consideration. Thank you. Thank you. All right. Thank you very much to both sides for your argument in this matter. The matter submitted for discussion.
judges: Cole, Tashima, Nguyen